UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL JOHNSON,

    Plaintiff,

v.

SERVICE TOOL COMPANY, LLC,

    Defendant.

_____/

CASE NO. 2:14-cv-12438

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

**I.    INTRODUCTION**

Before the Court is Defendant Service Tool Co., LLC's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Plaintiff Russell Johnson filed the instant lawsuit seeking damages for injuries he sustained in a hunting accident when he used a cargo tie-down ratchet strap (the "Regal Strap"), distributed by Defendant Service Tool, as a replacement for a treestand support strap; the strap's stitching separated from the wedding; and Plaintiff fell 20 feet to the ground. Plaintiff filed a two-count complaint, alleging negligence and gross negligence. (Doc. No. 15, Ex. B). Defendant maintains that Plaintiff's claims cannot survive because Plaintiff fails to show that Defendant, as a non-manufacturer seller, breached any duty under Mich. Comp. Law § 600.2947(6). Defendant further raises three defenses: (1) Plaintiff's use of the cargo tie-down strap to support a treestand is an unforeseeable misuse; (2) Plaintiff's own comparative negligence in using the treestand precludes any recovery; and (3) the non-party Dunham's Sports is at fault for knowingly selling Plaintiff the treestand without a

supporting strap or instruction manual. For the reasons that follow, the Court **GRANTS** Defendant's motion.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) authorizes a court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

## III. STATEMENT OF FACTS

On October 10, 2013, Plaintiff Russell Johnson purchased a floor model treestand from Dunham's Sports ("Dunham"). Since the treestand was an incomplete set missing components such as its supporting strap and instructional manual, Plaintiff signed a waiver stating he has "inspect[ed] and [was] satisfied with the condition of the product, packaging, materials and parts included with the tree stand." (Doc. 15, Ex. G). To replace the missing support strap, Mr. Johnson purchased a Regal 2-pc. 1''x15' Ratchet Tie-Down Set ("Regal Strap"), which is the product at issue.

The subject Regal Strap is a cargo tie-down strap imported and distributed by Defendant, Service Tools Co., LLC, a Louisiana limited liability company ("Service

Tool"). Service Tool imported the subject Regal Strap from an unknown manufacturer through intermediary distributors. Service Tool did not conduct independent testing or inspection of the straps and had no input into instructions/warnings on the product. Defendant's 30(b)(6) corporate representative testified that Service Tool has not fielded complaints or experienced issues with the subject Regal Straps before this lawsuit.

On October 11, 2013, Plaintiff went on a deer-hunting trip. He attempted to install the treestand with the subject Regal Strap at a point of a tree that was about 20 feet above the ground. As Plaintiff stepped on the treestand, the subject strap's stitching immediately separated from the webbing, and caused Plaintiff to fall 20 feet to the ground. Plaintiff suffered injury from the fall.

The subject Regal Strap's packaging did not explicitly specify its load limit or "breaking strength." Plaintiff's expert, Donald Pellow, conducted two testings on exemplar Regal Straps that revealed failure loads of 116 pounds and 334 pounds, respectively. (Doc. 15, Ex. J). Mr. Pellow subsequently tested five competitors' straps and revealed failure loads ranging from 1,256 pounds to 2,610 pounds. (Id.). Defendant's expert, Steve Rundell, performed testing on the exemplar straps that would have come with Plaintiff's treestand set and revealed failure loads ranging from 1,468 pounds to 2,189 pounds. (Doc. 15, Ex. K).

On June 23, 2014, Plaintiff filed the instant action against Defendant alleging negligence and gross negligence and requested the Court to award all damages allowed under Michigan law. (Doc. 1). The parties conducted discovery, and the discovery was closed on June 20, 2015. (Doc. 13; Doc. 14). On October 7, 2014, Defendant filed a notice of non-party at fault against Dunham. (Doc. 10). On July 20,

3

2015, Defendant filed the instant Motion for Summary Judgement requesting the Court to dismiss Plaintiff's Complaint in its entirety, and grant any other relief deemed equitable and just. (Doc. 15).

## IV. ANALYSIS

### A. Defendant Service Tool's Status as Manufacturer or Non-Manufacturer

The Michigan Product Liability Act (MPLA) significantly limits the liability of a non-manufacturer seller as compared to a manufacturer. See Mich. Comp. Laws § 600.2947(6). Case law within this District explains:

> The legislative history of Section 2947 reveals the Legislature's intent to limit the liability of sellers only to those cases where their independent negligence is shown. The Senate Fiscal Agency's report on the product liability measures of Michigan's tort reform legislation explains:
>
>> By holding sellers responsible for their own wrongdoing, the bill would eliminate unnecessary and burdensome legal costs and insurance premiums. Since manufacturers ultimately indemnify sellers for the harm caused by the manufacturers' own products, claims should be brought directly against them.
>
> [Senate Fiscal Agency Analysis of S.B. 344, p. 10]

Mills v. Curioni, Inc., 238 F. Supp. 2d 876, 886 (E.D. Mich. 2002). As a preliminary issue, the parties dispute whether Defendant should be considered a "manufacturer" or a "non-manufacturer seller" for the instant action.

Defendant Service Tool Company, LLC, imported the ratchet strap at issue from an unknown manufacturer through intermediary distributors. (Doc. No. 15, Ex. C). Defendant argues that it is not a "manufacturer" of the ratchet strap at issue because (1) it did not design or manufacture the strap, and (2) it did not exercise any control or ownership over the manufacturer where it did not even know who the manufacturer

4

was. Defendant claims that all it did was to import the products and put its own branding information on the product packaging.

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." Performance Contracting Inc. v. DynaSteel Corp., 750 F.3d 608, 611 (6th Cir. 2014) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 417 (1996)). The Michigan Product Liability Act does not define "manufacturer." See Mich. Comp. Laws § 600.2945. In the context of Michigan's Bulk Transfers Act, the Michigan Court of Appeals relied on Black's Law Dictionary to define a manufacturer as an "entity engaged in producing or assembling new products." Tubelite, Inc. v. Lakeshore Glass & Metals, Inc., No. 215600, 2000 WL 33529759, at *3 (Mich. Ct. App. Feb. 18, 2000). Absent controlling authority holding otherwise, courts in this District have found this common-sense definition applicable to Michigan Product Liability Act. Kraft v. Dr. Leonard's Healthcare Corp., 646 F. Supp. 2d 882, 888 (E.D. Mich. 2009).

In this case, the parties do no dispute that Service Tool did not engage in "producing or assembling new products," so Defendant is a non-manufacturer by definition. Id. at 888. Service Tool merely imported the subject Regal Straps from an unknown manufacturer through two intermediary distributors. This is essentially the same set of facts confronted by this District in Kraft v. Dr. Leonard's Healthcare Corp.. Id. In Kraft, the purchaser of a "no-slip ice carpet" brought a product liability action against the distributor PPR after he fell while using the product. Id. at 884. The plaintiff similarly tried to characterize the distributor PPR as a "manufacturer" where PPR purchased the product from an unknown Chinese manufacturer through an intermediary importing company. Id. at 885-86. The Kraft court rejected this characterization

5

because "[p]laintiff has not demonstrated more than a tangential connection between PPR and the Chinese manufacturer, nor any evidence that PPR exercises any control or ownership over the Chinese manufacturer." Id. at 888. The same analysis applies here. The connection between Service Tool and the manufacturer is just as tangential as the relationship between PPR and the Chinese manufacturer in Kraft. Plaintiff proffered no evidence to demonstrate that Service Tool exercised any control or ownership over the manufacturer. Therefore, Service Tool cannot be designated as the "manufacturer" of the subject Regal Straps.

      1.  Federal Statute

Plaintiff does not dispute the fact that Defendant did not design or manufacture the ratchet strap at issue. Instead, Plaintiff argues that Defendant imports consumer products which renders it a "manufacturer" under Consumer Product Safety Act (CPSA), 15 U.S.C. § 2052(a)(11). Plaintiff further argues that Defendant, as an importer, is "subject to all the same responsibilities as a domestic manufacturer" under the Consumer Protection Safety Improvement Act (CPSIA), 16 C.F.R. § 1009.3(b). The Consumer Product Safety Act, enacted in 1972, established the United States Consumer Product Safety Commission (CPSC) as an independent regulatory commission to develop consumer product safety standards and regulate the associated risks. 15 U.S.C. §§ 2051, 2053. The Consumer Product Safety Improvement Act of 2008 broadened the scope and authority of the CPSC in regulating the safety and distribution of consumer products within the United States. Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016 (2008).

Plaintiff's reliance on the federal statute to cast Defendant as a "manufacturer" in a Michigan tort dispute is unavailing. The CPSA explicitly authorizes consumers to bring a private cause of action for damages or injuries sustained by any person due to a violation of consumer product safety rules promulgated by CPSC. See 15 U.S.C. § 2072(a) . However, Plaintiff did not bring the instant action under the Act. Rather, he brought state law tort claims.  In referencing the federal statute, Plaintiff does not cite to any specific section under which knowing or willful violation arose, or any section specifying what obligations were imposed on a manufacturer or an importer. Instead, Plaintiff merely cites to a definition controlling over a federal statute that treats an "importer" as a "manufacturer," but subsequently alleges negligence and gross negligence under Michigan tort law. A federal court exercising diversity jurisdiction over a state claim must apply the state substantive law, Performance Contracting, 750 F.3d at 611, and Plaintiff explicitly acknowledges this. (Doc. No. 18, at 11, n.1). Plaintiff provides no justification or authority for why it is appropriate for the Court to seek support from the cited federal statute in interpreting the Michigan Product Liability Act in a Michigan tort dispute. (Doc. 18, at 20-23).

Other than the federal statutes, Plaintiff proffered no concrete evidence regarding Defendant's status as a manufacturer. This argument is insufficient to establish that Defendant is a "manufacturer" under MPLA or that there is a genuine issue for trial. See Baye v. HBI Branded Apparel Enters., No. 12-CV-12869, 2013 WL 6546815, at *4 (E.D. Mich. Dec. 13, 2013) (granting defendant's summary judgement motion and rejecting plaintiff's characterization of defendant as a "manufacturer"  without any concrete supporting evidence).  Accordingly, this argument fails.

2. Voluntary Assumption of Duty

In its response to this motion, Plaintiff adds a new theory that Defendant voluntarily assumed the duty of a manufacturer by importing the ratchet straps at issue to the United States. Plaintiff argues that Defendant "voluntarily assumed the duties and obligations under the Consumer Product Safety Act," which treats an importer as a manufacturer. Plaintiff specifically cites to the testimony of Defendant's corporate Rule 30(b)(6) representative, Thomas LeBlanc, who admitted that "Service Tool agrees to comply with whatever federal laws there are dealing with consumer products[.]" (Doc. 18, Ex. 9, at 14). Plaintiff's web-sling industry expert witness, Donald Pellow, further testified that, under the authority of federal Consumer Product Safety Act, the consumer protection agency would designate an importer in Defendant's position as a manufacturer. (Doc. 18, Ex. 14, at 55).

"A party may be under a legal duty when it voluntarily assumes a function that it is not legally required to perform." Zychowski v. A.J. Marshall Co., Inc., 590 N.W.2d 301 (Mich. Ct. App. 1998). "When a person voluntarily assumes a duty not otherwise imposed by law, that person is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task." Zine v. Chrysler Corp., 600 N.W.2d 384, 395 (Mich. Ct. App. 1999) (citation and internal quotation marks omitted). A defendant must perform some affirmative action in furtherance of the alleged duty before he can be said to have voluntarily assumed a duty. Zychowski, 590 N.W.2d at 301 (holding that defendant did not voluntarily assume the duty to assist the recall efforts where defendant undertook no affirmative action to assist the recall).

Plaintiff's application of voluntary assumption of duty doctrine lacks merit. In justifying why an affirmative action of importation would invoke an assumed duty of a manufacturer, Plaintiff once again relies on the Consumer Product Safety Act that treats an importer as a domestic manufacturer. As previously illustrated, the Consumer Product Safety Act has no applicability in this Michigan tort case. Further, Plaintiff alleges no affirmative action, apart from its status as an importer, which would trigger a heightened duty. This argument therefore is coextensive with Plaintiff's argument concerning the CPSA's treatment of an importer as a manufacturer. Plaintiff provides no other authority in supporting its theory that a seller may voluntarily assume the duty of a manufacturer by importing products.

Further, Defendant correctly points out that the two cases cited by Plaintiff are unavailing. In Rupert v. Daggett, the Sixth Circuit found that, when a driver agreed to lead the way for another driver, the leading driver assumed a duty to lead carefully. 695 F.3d 417, 424-25 (6th Cir. 2012). In Zychowski, the court found defendant did not voluntarily assume a duty to assist recalling effort because defendant undertook no affirmative action to assist the recall. 590 N.W.2d at 301. In these cases, there were clear showings of affirmative undertakings going beyond existing duties. Such an affirmative undertaking cannot be found in the instant action.

For reasons mentioned above, the Court finds that Defendant Service Tool is a "non-manufacturer seller" under Mich. Comp. Laws § 600.2947(6) for the purpose of this action.

### A. Plaintiff's Tort Claims

1. Negligence

9

As discussed above, under Michigan's tort reform law, a seller, who is not a manufacturer, is liable for harm allegedly caused by the product only if:

(a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries; or
(b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

Mich. Comp. Laws § 600.2947(6).

Failure to exercise reasonable care means that a plaintiff must show that a non-manufacturer seller knew or had reason to know of an alleged defect in the product sold. Hollister v. Dayton Hudson Corp., 201 F.3d 731, 736 (6th Cir. 2000); Kraft, 646 F. Supp. 2d at 888; Williams v. Kia Motors Am., Inc., No. 05-60018, 2005 WL 2649152, at *2-3 (E.D. Mich. Oct. 14, 2005); Mook v. Gen. Motors. Co., No. 309147, 2013 WL 3198137, at *6 (Mich. Ct. App. June 25, 2013).

Based on the incorrect premise that Defendant is a "manufacturer," Plaintiff contends that Defendant was negligent and breached implied warranties for failing to properly test the product and ensure its quality. (Doc. 15, Ex. B, at 5-6; Doc. 18, at 14-15). This is directly contrary to the law. "A seller has no duty to inspect a product unless the seller has reason to know that it is defective or the defect is readily ascertainable." Mook, 2013 WL 3198137, at * 6 (quoting Konstantinov v. Findlay Ford Lincoln Mercury, 619 F. Supp. 2d 326, 331 (E.D. Mich. 2008)). Plaintiff has otherwise proffered no evidence to demonstrate that Defendant, as a non-manufacturer seller, knew or had reason to know of the alleged defect. Therefore, there is no genuine issue of a material fact as to the negligence claim, and granting the motion for summary judgement in this regard is appropriate. See Williams, 2005 WL 2649152, at *2-3

10

(granting the defendant's motion for summary judgement on the negligence claim where plaintiff failed to advance any evidence to show the defendant, as a non-manufacturer seller, knew or should have known of the alleged defect). See also Fire Ins. Exch. v. Electrolux Home Prods., No. 05-70965, 2006 WL 2925286, at *8 (E.D. Mich. Oct. 11, 2006); Mills, 238 F. Supp. 2d at 887-88.

1. Gross Negligence

It is axiomatic that any claim of negligence requires the plaintiff to establish four elements: duty, breach, causation and damages. Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C., 489 Mich. 157, 162 (2011) (citing Roulo v. Auto. Club of Mich., 386 Mich. 324, 262 (1971)). If no duty exists, there can be no liability for negligence. Beaty v. Hertzberg & Golden, P.C., 456 Mich. 247, 262 (1997). In addition to the elements of negligence itself, a claim for gross negligence requires "conduct so reckless as to demonstrate a substantial lack of concern whether injury results." Mich. Comp. Laws § 600.2945(d). See also, Xu v. Gay, 668 N.W.2d 166, 170 (Mich. Ct. App. 2003) (citation omitted). The Court has discussed the fact that Plaintiff provides no proof to support paragraphs 21-23 of the Complaint alleging that Defendant had actual knowledge of the alleged defect and that it willfully disregarded the knowledge.

Absent a showing of negligence, Plaintiff's gross negligence claim must also fail. Given the Court's previous finding that Defendant did not have a duty to test or inspect to begin with, Plaintiff cannot show that Defendant was reckless in failing to do so. See Mitchell v. Taser Int'l, Inc., No. 09-11480, 2014 WL 3611632, at *5 (E.D. Mich. July 23, 2014) (granting the defendant's summary judgement motion for gross negligence where the plaintiff failed to show a duty exists for the underlying negligence claim); Peak v.

Kubota Tractor Corp., 924 F. Supp. 2d 822, 833 (E.D. Mich. 2013) (holding that the plaintiff cannot maintain a gross negligence claim where there is no evidence showing defendant's knowledge of the alleged defect).  For these reasons, the Court grants Defendant's motion and dismisses both the negligence and gross negligence claims.

### A. Misuse

Defendant further claims as a defense that (1) Plaintiff misused the Regal Strap and (2) this misuse was not reasonably foreseeable.  In Michigan, misuse of a product is an absolute defense for a manufacturer or a seller in a product liability action if the misuse was not reasonably foreseeable to the defendant.  Mich. Comp. Laws § 600.2948(2).  The Michigan Product Liability Act further provides:

> "Misuse" means use of a product in a materially different manner than the product's intended use.  Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances.

Mich. Comp. Laws § 600.2945(e).  The Michigan Product Liability Act specifically mandates that "[w]hether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court."  Mich. Comp. Laws § 600.2948(2).

Defendant contends that Plaintiff's use of the Regal Strap was a misuse. Defendant reasons that the intended use of the Regal Strap is to tie down and secure cargo in a vehicle, not to secure the weight of a human suspended 20 feet in the air on the side of a tree.  In supporting its argument, Defendant points to packaging of the Regal Strap which provides the following instructions or warnings:

- "For Hand Truck," "For Pickups," "For Auto," and "For Boats."
- Step-by-step instructions including language "To Tie Down" and "To Release."
- "Attachment area on car, truck, van or trailer must have sufficient strength to hold load.  Secure load carefully with strap."
- "Do not use for lifting or towing vehicle. Use only as a tie down."
- "Warning: Ratchet tie downs are not to be used to tie down motorcycles, moto bikes, or any 2 wheel or wheel all terrain vehicles (ATV'S).  Only buckle tie downs should be used for tying down wheeled items. Ratchet tied down are designed to tie down & secure loads & not wheeled items. Failure to head [sic] this warning may result in damage to your wheeled vehicle."

(Doc. 15, Ex. D).

Plaintiff first argues that his use of the Regal Strap is not a misuse because his use is not a "materially different manner than the product's intended use." Plaintiff reasons that both the subject Regal Strap and the original treestand strap serve the same purpose: to secure loads.  In supporting his position, Plaintiff cites to the testimony of Defendant's engineering expert witness stating that both types of straps were used to secure loads.  (Doc. 18, Ex. 6, at 47-48).  Plaintiff further points to the warning on the Regal Strap package which provides: "Ratchet tie downs are designed to tie down & *secure loads* & not wheeled items" and "*Secure load* carefully with strap. Make sure hooks are fastened securely."  (Doc. 18, Ex. 1) (emphasis added).  Plaintiff specifically distinguishes the present case from Davila-Martinez v. Brinks Guarding Servs. Inc., where the plaintiff replaced an "S" hook on a treestand fastening chain with an additional chain and a padlock. No. 261941, 2005 WL 3050485, *1 (Mich. Ct. App.

13

Nov. 15, 2005). The Court of Appeals held, as a matter of law, that plaintiff misused the lock at issue because locks are intended to provide security for property whereas the "S" hook is intended for weight bearing purposes. Id. at *6. Here, Plaintiff argues the two straps serve the same purpose of securing loads.

Plaintiff's use of a cargo tie-down strap to replace a treestand support strap constitutes a misuse under Michigan law. Plaintiff is correct to the extent that both the original strap and the Regal Strap serve the purpose of securing loads. However, it does not follow that the subject Regal Strap is intended to be used to secure any load in any manner. See Bazinau v. Mackinac Island Carriage Tours, 593 N.W.2d 219, 225-26 (Mich. Ct. App. 1999) (noting that using a sidewalk snow-clearing tractor to clear snow on a frozen lake constitutes a misuse). The instructions and warnings clearly establish that the Regal Strap is to be used "only as a tie down" in connection with transporting cargo. (Doc. 15, Ex. D). Therefore, Plaintiff's use of the Regal Strap to support a treestand is in "a materially different manner than the product's intended use." Mich. Comp. Laws § 600.2945(e).

Plaintiff next contends that ratchet tie-down straps are commonly used in the hunting community to secure treestands. Therefore, his use of the Regal Strap is consistent with "those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstance" under the statutory definition of "misuse." Mich. Comp. Laws § 600.2945(e). To support his argument, Plaintiff supplied the following evidence:

Nov. 15, 2005). The Court of Appeals held, as a matter of law, that plaintiff misused the lock at issue because locks are intended to provide security for property whereas the "S" hook is intended for weight bearing purposes. Id. at *6. Here, Plaintiff argues the two straps serve the same purpose of securing loads.

Plaintiff's use of a cargo tie-down strap to replace a treestand support strap constitutes a misuse under Michigan law. Plaintiff is correct to the extent that both the original strap and the Regal Strap serve the purpose of securing loads. However, it does not follow that the subject Regal Strap is intended to be used to secure any load in any manner. See Bazinau v. Mackinac Island Carriage Tours, 593 N.W.2d 219, 225-26 (Mich. Ct. App. 1999) (noting that using a sidewalk snow-clearing tractor to clear snow on a frozen lake constitutes a misuse). The instructions and warnings clearly establish that the Regal Strap is to be used "only as a tie down" in connection with transporting cargo. (Doc. 15, Ex. D). Therefore, Plaintiff's use of the Regal Strap to support a treestand is in "a materially different manner than the product's intended use." Mich. Comp. Laws § 600.2945(e).

Plaintiff next contends that ratchet tie-down straps are commonly used in the hunting community to secure treestands. Therefore, his use of the Regal Strap is consistent with "those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstance" under the statutory definition of "misuse." Mich. Comp. Laws § 600.2945(e). To support his argument, Plaintiff supplied the following evidence:

- A user manual from a Sniper treestand unrelated to this case indicating the manufacturer uses a ratchet strap as the original equipment for its Intimidator ladder treestand model.  (Doc. 18, Ex. 3, at 14).
- A ratchet tie-down strap from Service Tool's competitor for which the Plaintiff argues that the camouflage pattern on the strap indicates its use in deer hunting activities.  (Doc. 18, Ex. 4).
- The Sportsman's Guide website for "4-Pk. Of Guide Gear Tree Stand Ratchet Straps" where the "Details & Specs" section indicates that it is "[a]lso great for strapping cargo onto trucks, trailers and ATVs."  (Doc. 18, Ex. 5).

Drawing all reasonable inferences in favor of Plaintiff, the evidence fails to establish that the hunting community commonly uses ratchet straps to replace treestand support straps.  Exhibit 3 of Plaintiff's response discloses a treestand using a ratchet strap as part of its original equipment.  (Doc. 18, Ex. 3, at 14).  However, nothing in the submitted manual suggests that the strap can be replaced by non-original manufacturer equipment designed for a different purpose.  On the contrary, the user manual specifically warns, "REPLACE any damaged or worn part with original parts . . . Failure to follow these instructions may result in serious injury or death!"  (Doc. 18, Ex. 3, at 3).  Exhibit 4 of Plaintiff's response discloses a cargo tie-down strap with a camouflage pattern that, according to Plaintiff, implies the strap's deer hunting applications.  (Doc. 18, Ex. 4).  While the camouflage pattern may suggests the strap's popularity in the hunting community, to draw the inference of its suitability to support a treestand from the strap's pattern requires the Court to fill in a logical gap that is too significant to be reasonable.  Exhibit 5 of Plaintiff's response discloses Gear Tree Stand Ratchet Straps

15

that are suitable for "strapping cargo onto trucks, trailers and ATVs". (Doc. 18, Ex. 5, at 2). While this evidence establishes that a treestand strap may be used as a cargo strap, nothing suggests that the inverse is true. Taken together, the evidence fails to establish even a single instance of a cargo tie-down strap being used as a treestand support strap prior to this case, let alone establish that it is a common practice in the deer hunting community.

Even assuming that the hunting community commonly uses ratchet straps to replace treestand support straps, it does not follow that a reasonably prudent person would consider Plaintiff's use of the subject Regal Strap suitable in this case. The instructions and warnings clearly indicate that the Regal Strap can be used only as a cargo tie-down strap. Plaintiff supplies no evidence to indicate that a reasonably prudent person or a person from the hunting community would overlook or ignore such clear instructions and warnings. For these reasons, the Court finds that Plaintiff's use of Regal Strap constitutes a misuse under Mich. Comp. Laws § 600.2948(2).

Next, the Court must determine whether this misuse was reasonably foreseeable. To determine the foreseeability of a misuse, the crucial inquiry is (1) whether the use made of the product was a common practice, and (2) whether the manufacturer was aware, or should have been aware, of that use. Gootee v. Colt Indus., Inc., 712 F.2d 1057, 1065 (6th Cir. 1983) (citing Mach v. Gen. Motors Corp., 315 N.W.2d 561, 564 (Mich. Ct. App. 1982)).

Plaintiff's misuse was unforeseeable. The evidence purportedly demonstrating the common use of ratchet straps in the deer hunting community establishes, at best, the first prong of the Gootee two-prong test. 712 F.2d at 1065. However, discovery

fails to produce any evidence to establish the second prong that Defendant knew or should have known of the misuse, and Plaintiff does not dispute it in its response. For the reasons above, the Court holds that Plaintiff's use of the subject Regal Strap constitutes an unforeseeable misuse that precludes him from any recovery from Defendant.

### A. Comparative Fault

Defendant raises Plaintiff's comparative negligence and the fault of the non-party Dunham as two separate defenses. Since the two defenses involve the same legal standard, the two issues will be analyzed together.

Specifically, Defendant argues that Plaintiff's own negligence precludes any recovery. Defendant's treestand expert, L.J. Smith, testified that Plaintiff violated numerous safety principles in using the treestand, including not using a safety harness, not using the treestand with other people present, not maintaining three points of contact with the tree, and using a tree of improper size for the treestand. (Doc. 15, Ex. L, at 29-31). Defendant's engineering expert, Dr. Rundell, testified that Plaintiff essentially redesigned the treestand by replacing the original equipment manufacturer strap assembly with the subject ratchet tie-down strap which resulted in the equipment's failure during use. (Doc. 15, Ex. K, at 14).

Defendant further argues that the non-party Dunham is at fault for plaintiff's injury for selling the floor model treestand without the necessary support strap or the instruction manual. Defendant argues Dunham violated its internal policy which requires a treestand with missing parts to be returned to the Distribution Center as defective. (Doc. 15, Ex. F). Defendant further argues that a Dunham representative

improperly signed the waiver to verify to the customer that all parts are included. (Doc. 15, Ex. G). Defendant contends that, in doing so, the non-party Dunham failed to exercise reasonable care and fault should be allocated to it accordingly.

According to Michigan law:

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of 1 person, *including* third-party defendants and *nonparties*, the court, unless otherwise agreed by all parties to the action, shall *instruct the jury to answer special interrogatories* . . .

Mich. Comp. Laws § 600.6304(1) (emphasis added).

"In [Michigan] in all but rare instances the questions of negligence and proximate causality are for the jury where, as here, one has been demanded." Kubasinski v. Johnson, 208 N.W.2d 74, 75 (Mich. Ct. App. 1973) (citations omitted). "Only under the most extreme circumstances, those, in fact, where reasonable minds could not differ upon the facts, or the inferences to be drawn therefrom, can the case be taken from the jury." Id. (quotation omitted). In a case where "both parties bear responsibility for some substantial portion of the fault, [it] is [not] the kind of 'exceptional negligence case' in which summary judgement is appropriate." Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 376 (6th Cir. 2009) (quoting Rogers v. Peabody Coal Co., 342 F.2d 749, 751 (6th Cir. 1965)).

The question of Plaintiff's and the non-party Dunham's comparative fault is a question for the jury. See Bradford v. Wurm, 610 F. Supp. 2d 835, 846 (E.D. Mich. 2009). The determination of comparative fault, as Defendant requests, is not appropriate for resolution on summary judgement. Id. Nor is it necessary in this case, where Plaintiff fails to establish that Defendant breached any duty and his unforeseeable misuse of the Regal Strap bars any recovery.

## V. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion for Summary Judgement.

**IT IS SO ORDERED.**

Date: November 30, 2015            s/Marianne O. Battani
                                   MARIANNE O. BATTANI
                                   United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 30, 2015.
                                   s/ Kay Doaks
                                   Case Manager